*FILED*

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: **Middle District of Florida, Ocala Division** |
|---|---|
| Name (under which you were convicted): **Dedrevionus C. Williams** | Docket or Case No.: 5:20-cv-37-Oc-37PRL |
| Place of Confinement : **Marion Correctional Institution, Florida** | Prisoner No.: **K78641** |
| Petitioner: **DEDREVIONUS C. WILLIAMS** | Respondent: **MARK S. INCH, Secretary, Florida Dept. of Corrections** |
| The Attorney General of the State of Florida: | **Ashley B. Moody** |

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   **Indian River County Courthouse, 19th Judicial Circuit Court**
   **2000 16th Avenue, Vero Beach, FL 32960**

   (b) Criminal docket or case number:    **31-2013-CF-001635-A**

2. (a) Date of the judgment of conviction:    **November 4, 2015 (Trial Date)**
   (b) Date of sentencing:    **December 10, 2015**

3. Length of sentence:

   **Count 1: Life in prison as a Prison Releasee Reoffender ("PRR")**

4. In this case, were you convicted on more than one count or of more than one crime?

   Yes ✓        No ☐

5. Identify all crimes of which you were convicted and sentenced in this case:

   **Count 1: Armed Burglary of a Dwelling**

6. (a) What was your plea? (Check one)

   (1)  **Not guilty** ✓       (3)  Nolo contendere (no contest)  ☐
   (2)  Guilty  ☐              (4)  Insanity plea              ☐

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

**Not applicable.**

(c) If you went to trial, what kind of trial did you have? (Check one)

**Jury** ✓          Judge only ☐

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

**Yes** ✓          No ☐          **At the pre-trial Suppression Hearing.**

8. Did you appeal from the judgment of conviction?

**Yes** ✓          No ☐

9. If you did appeal, answer the following:

(a)  Name of court:                          **4th District Court of Appeal, West Palm Beach, Florida**
(b)  Docket or case number:          **4D15-4755**
(c)  Result:                                       **PCA without written opinion.**
(d)  Date of result:                          **December 15, 2016 (Opinion Date)**
(e)  Citation to the case:                 *Williams v. State*, **229 So.3d 354 (Fla. 4th DCA 2016)**
(f)   Ground raised: **The trial court erred in refusing to admit a material 9-1-1 call into evidence as an excited utterance or spontaneous statement.**
(g)  Did you seek further review by a higher State court?      Yes ☐          No ✓
      If yes, answer the following:
      **Not applicable.**
(h)  Did you file a petition for certiorari in the United States Supreme Court?
      Yes ☐          No ✓
      If yes, answer the following:
              **Not applicable.**

10.     Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any State court?

**Yes** ✓          No ☐

11.     If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:        **19th Judicial Circuit, in and for Indian River County, FL**
       (2)  Case number:        **31-2013-CF-001635-A; and 4D19-2045**
       (3)  Date of filing:        **November 27, 2017**
       (4)  Nature of the proceeding:  **Rule 3.800(a) Motion to Correct Illegal Sentence**



(5) Ground raised:
    1. **Life sentence imposed on Defendant was illegal because it fails to comport to the constitutional requirement prohibiting a person from being sentenced to an indefinite sentence term.**

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☐     No ✔

(7) Result:           **Denied on appeal.**

(8) Date of result:     **October 11, 2019 (Mandate Date).**

(9) Citation to the case:    ***Williams v. State**, 2019 Fla.App. LEXIS 13697 (Fla. 4th DCA 2019)*

(b) If you filed any second petition, application, or motion, give the same information:

(b) (1) Name of court:    **19th Judicial Circuit, in and for Indian River County, FL**

    (2) Case number:     **31-2013-CF-001635-A; and 4D18-2363**

    (3) Date of filing:      **April 26, 2018**

    (4) Nature of the proceeding: **Rule 3.850 Motion for Postconviction Relief**

    (5) Grounds raised:   **Ineffective Assistance of Counsel = IAC**
        1. **IAC for failing to seek the trial judge's recusal for being biased and impartial.**
        2. **IAC for eliciting and highlighting harmful testimony and evidence through cross-examination of Deputy James Dixon.**
        3. **Cumulative effect of Counsel's errors was constitutionally ineffective.**

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☐     No ✔

    (7) Result:          **PCA opinion - denied on appeal.**

    (8) Date of result:     **February 8, 2019 (Mandate Date).**

    (9) Citation to the case:    ***Williams v. State**, 262 So.3d 731 (Fla. 4th DCA 2019)*

(c) If you filed any third petition, application, or motion, give the same information:

(c) (1) Name of court:    **4th District Court of Appeal, West Palm Beach, Florida**

    (2) Case number:     **Unknown**

    (2) Date of filing:      **March 17, 2018**

    (4) Nature of the proceeding: **9.141(d) Petition Alleg. Ineff. Asst. of App. Counsel**

    (5) Ground raised:   **Ineffective Assistance of Appellate Counsel = IAAC**
        1. **IAAC for failing to correctly argue that the trial court erred in refusing to admit a material 9-1-1 call into evidence due to the lack of credibility and insufficiency of the evidence presented at the Motion to Suppress hearing.**

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☐     No ✔

    (7) Result:          **Denied on the merits.**

    (8) Date of result:     **April 3, 2018.**

(d) Did you appeal to the highest State court having jurisdiction over the action taken on your petition, application, or motion?

(1) First Petition:    **Yes** ✔    No ☐
(2) Second Petition:  **Yes** ✔    No ☐
(3) Third Petition:    **Yes** ✔    No ☐

(e) If you did not appeal to the highest State court having jurisdiction, explain why you did not:

**Not applicable.**

## STATEMENT OF THE CASE AND FACTS

This case involves a residential burglary that allegedly occurred on December 24, 2013. The Petitioner, Dedrevionus C. Williams ("Williams" or "Petitioner") was charged by Information with three counts as follows: Armed Burglary of a Dwelling (Count 1); Grand Theft of a Firearm (Count 2); and Possession of a Firearm by a Convicted Felon (Count 3). On November 4, 2015, Williams went to trial on the sole count of Armed Burglary of a Dwelling (Count 1).

At trial, David May testified that on that date he was working as a deputy with Indian River County Sheriff's Office ("IRCSO") (**T 221**). May was working as a road patrol deputy when he was dispatched to 4845 38th Circle, Apartment 207 in Indian River County (**TT 222-224**). Three or four other deputies arrived at the scene within five or ten minutes (**T 225**). The apartment door was locked (**T 227**). A suspect was detained at the scene and then released (**TT 227-228**). The resident, Gessica Kern arrived about at the scene 15-20 minutes after May arrived (**T 230**). A window was broken in the back of the apartment (**TT 230-231**). There was a footprint on top of the air condition unit (**T 231**). Ms. Kern handed police the keys to the

apartment (T 231).  Deputy May entered the apartment with a K-9 unit and his supervisor (TT 231-232).  Police announced their presence, then sent the K-9 dog further into the apartment (T 232).  They checked several rooms without the dog alerting, but then the dog began to bark (TT 232-233).  Deputy May apprehended a man they deemed a suspect, Mr. Kernard Glass (T 233-234).  May handed off the suspect to Sergeant Pierce (TT 233-234).  Deputy Dixon, the K-9 handler then declared the apartment cleared (T 235).  Ms. Kern entered her apartment with her child (T 235).  Sergeant Pierce opened the door to the apartment closet and started yelling commands to a man hiding in there (T 235).  This other suspect was identified as the Petitioner (T 235).  Ms. Kern was escorted out of the apartment with her child (TT 235-236).  Williams was handcuffed by police and was taken into custody (TT 235-236).

On December 24, 2013, Mike Pierce testified that he was a Patrol Sergeant with IRCSO when he was dispatched to 4845 38th Circle, Apartment 207 in Indian River County (T 240).  He arrived at the scene approximately at 10:15 AM (T 242).  While searching the residence with other police, Pierce located a person inside of the closet (T 249).  Pierce identified the man as the Petitioner (T 249).  Pierce pulled out his gun and started issuing Williams commands (T 250).  Williams complied with all of the officer's orders and was handcuffed and taken into custody (T 250).  The Petitioner had no weapons on his person (TT 250-251).  After further searching the apartment, a rifle was found lying inside of a crib (T 251).

On December 24, 2013, Gessica Kern testified that she was living at 4845 38th Circle, Apartment 207 in Indian River County along with her one-year old son (TT 254-255).  Her son's father, Josh Cooper also stayed there on occasion (T 255).  When Kern arrived at her apartment on the night in question, there were numerous IRCSO officers at the scene (T 256).  Kern noticed that one of her apartment windows was broken (TT 256-257).  Kern also noticed that

there were several missed calls from her neighbor on her phone (TT 257-258). Kern handed the keys to the police to the officers to conduct a search inside the apartment (T 260). Kern was cleared at one point to enter the apartment with her child (TT 261-262). Kern was escorted back out of her apartment when police found another suspect still hiding in the closet (T 262). Kern was not aware of any firearms being kept in her apartment (TT 262-263). Kerns testified that none of the firearms recovered by police at the scene belonged to her (TT 263-264). Kerns additionally stated that she was not aware of her child's father keeping any forearms inside of her apartment (T 264).

On December 24, 2013, at about 10:15 AM, James Dixon testified that he was the K-9 handler with IRCSO that was dispatched to 4845 38th Circle, Apartment 207 in Indian River County (T 271). Dixon entered the apartment with his dog at about 10:45 AM or 11:00 AM (T 274). Dixon announced police presence into the apartment but received no response (T 275). The officer and dog proceeded into the baby's room that contained a crib inside (T 277). Dixon grabbed the comforter off the crib and a rifle fell out (T 279). The dog then stuck its head under the crib and Dixon heard a man screaming (T 281). The dog was observed biting suspect Kernard Glass (TT 281-282). Glass was apprehended by police and was escorted outside the apartment (T 282). Dixon later saw Sergeant Pierce detaining the Petitioner (T 283). Dixon overheard the Petitioner ask Sergeant Pierce, "Which gun?" (T 286). Williams was asked what he meant but did not reply (T 286). Dixon returned to the closet where they had discovered Williams hiding (T 287). Dixon moved some clothes around and saw the sawed-off butt of a shotgun (T 287). Dixon moved more clothing and discovered what appeared to be a black handgun (T 289).

On December 24, 2013, Nicole Kilgore testified that she was the Crime Scene Investigator with IRCSO that was dispatched to 4845 38th Circle, Apartment 207 in Indian River County sometime in the afternoon (TT 294-295). At the scene, Kilgore retrieved a .40-caliber pistol (TT 297-299). The pistol was found in a laundry basket inside of the child's bedroom (TT 299-300). There was a bullet inside of the chamber (T 301). Inside of the laundry basket, Kilgore also retrieved a shotgun containing an intact round of ammunition inside (TT 303-304). She also recovered a concrete block found inside of the master bedroom (TT 305-306). Kilgore did not recover any fingerprints of value from the scene (T 307). She did not test any surfaces or items for DNA testing (T 309). No gloves were recovered as part of her investigation (T 309).

On December 24, 2013, John Finnegan testified that he was the Lead Detective with IRCSO that arrived at 4845 38th Circle, Apartment 207 in Indian River County (TT 311-312). Finnegan entered the apartment after the K-9 Unit had completed their search (TT 316-317). The detective testified that Bernard Glass was found under the baby crib in one room, and that the Petitioner was located inside the apartment soon afterwards (T 318). Finnegan spoke to the Petitioner, who said his name was Antonio Williams (T 319). The detective explained that police had found a rifle and Williams asked, "Which gun?" (TT 319-320). When he was arrested and searched, Williams has a pair of latex gloves inside of his pocket (T 360. Finnegan took Williams to the IRCSO police station and interviewed him for hours (T 320). A redacted version of the police interview was played for the jury (T 328).

On the tape, Williams first requested a cigarette (T 333). The Petitioner then admitted his name was Dedrevionus Williams (T 333). Finnegan explained why the police had threatened the Petitioner at the scene (TT 334-336). Williams told police that earlier in the day the Petitioner had met up with "Nard" at about 9:45 AM or 10:00 AM (T 344). They were

accompanied by a third man that goes by "JJ" and that wore dreadlocks (TT 344-345). Williams claimed that the apartment window had already been broken when the men arrived (T 345). The Petitioner repeatedly denied having any guns in his possession (TT 351-352; T 356; T 362; TT 373-374; T 376). Williams claimed he found the latex gloves inside of the apartment (T 361). The Petitioner testified that he did not know a shotgun was inside of the clothes hamper (T 366). The interview was conducted over an 8-hour period (T 380). About two hours into the interview, Williams told police he had sold the Glock .40-caliber pistol to Josh Cooper, the father of the child (T 383). Cooper went by the name of Jake or Jay (T 384). After the gun sale, Williams stated he encountered a different man that needed a Glock .40 pistol (T 391). Williams then planned on getting his gun back from Cooper and selling it to the other man (T 391). Williams told police that JJ climbed up on the AC vent and broke the apartment widow with a rock (TT 392-393). Later in the interview, Williams claimed he obtained the latex gloves from another individual (T 403). At one point in the tape, Finnegan told Williams "You committed an armed burglary today" (T 407). The Petitioner replied, "I know... that's what I'm here for" (T 407). Williams admitted to police that he had not been honest with them earlier about certain things (T 410). Williams again proclaimed that he did not touch any of the firearms (T 411). Finnegan took Williams outside along with another officer for a smoke break (T 415).

Finnegan testified that while outside, Williams admitted that he had touched the guns and stated that he was sorry he had lied about it (TT 415-416). Finnegan returned inside the interview room with Williams and the Petitioner acknowledged that he took the two guns from inside the apartment (TT 416-417). Williams took the .40-caliber pistol and the .22-caliber rifle so that he could sell them on the street (T 418). Detective Finnegan testified that he later loaded the .40-caliber pistol and test-fired it, and the gun functioned properly (TT 423 -430). Finnegan

also loaded the .22-caliber rifle and test-fired it, and the rifle functioned properly (**TT 432-435**). The State rested.

Defense Counsel rested without presenting any witnesses in Williams' defense. Defense Counsel made his motion for Judgment of Acquittal ("JOA") that was denied by the trial court. After closing arguments and final jury instructions, the jury left the courtroom to begin deliberations. After deliberating, the jury found the Defendant guilty as charged as to the sole count of Armed Burglary of a Dwelling (Count 1). On December 10, 2015, sentencing was held whereby Williams was sentenced to Life in prison as a Prison Releasee Reoffender ("PRR").

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

> **Ground One: Raised on Direct Appeal**
>
> **The trial court abused its discretion when it denied the exculpatory admittance of a 9-1-1 call recording into evidence despite the fact it qualified as an excited utterance or spontaneous statement.**
>
> **This error violated the Petitioner's 14th Amendment right to due process, and his 6th Amendment right to a fair trial under the U.S. Constitution.**

(a) **Supporting facts** (Do not argue or cite law. Just state the specific facts that support your claim):

On the morning of December 24, 2013, a 9-1-1 call was placed with police to report the alleged burglary in progress at 4845 38th Circle, Apartment 207 in Indian River County. The 9-1-1 call makes no mention of the burglars being armed with firearms. One major issue at trial was whether or not the State could prove that the burglars were armed when they entered the

apartment or whether at some point after illegal entry, the men had even became armed. Although the State had evidence placing the two captured suspects, Mr. Kernard Glass and the Petitioner Dedrevionus Williams inside of the apartment, there was disagreement by the parties as to whether or not the men were armed or ever became armed during the burglary. The penalty associated with the firearm was huge as Armed Burglary of a Dwelling carried a mandatory Life sentence as a PRR whereby Simple Burglary (Unarmed) only carried a min/man of fifteen years in prison as a PRR.

The State put forth evidence at trial from the victim, Gessica Kern stating that she was not aware of any firearms being kept in her apartment (TT 262-263). Kerns testified that none of the firearms recovered by police at the scene belonged to her (TT 263-264). Kerns additionally stated that she was not aware of her child's father keeping any firearms inside of her apartment (T 264). Thereby, the State's case was based on the premise that the burglars brought the guns into the apartment when they entered the residence.

Conversely, the Defense was precluded from the jury hearing the tape of the 9-1-1 caller that reported seeing the men enter the residence but had made no mention of the men being armed. One of the firearms in question was a .22-caliber rifle that would have been hard to conceal from the 9-1-1 caller that reported the burglary in progress. Several times throughout the Defendant's taped interview with police, Williams proclaimed that he did not touch any of the firearms (TT 351-352; T 356; T 362; TT 373-374; T 376; T 411). It was only after an alleged smoke break with the interrogators (off-camera) that Williams returned to the interview room and acknowledged that he took the two guns from inside the apartment (TT 416-417). It was still unclear whether either of the defendants had time to actually handle the weapons or if they had to hide as soon as the police sirens were heard when they entered the residence.

The testimony at trial was convoluted as to where the weapons were even discovered by the police. Sergeant Mike Pierce testified that after further searching the apartment, a rifle was found lying inside of a crib (T 251). Conversely, K-9 handler James Dixon testified that when he grabbed the comforter off the crib, a rifle fell out (T 279). Dixon further testified that when he returned to the closet where they had discovered Williams hiding, Dixon moved some clothes around and saw the sawed-off butt of a shotgun (T 287). Dixon moved more clothing and discovered what appeared to be a black handgun (T 289). That would make three guns found by police, yet there is no further mention of any sawed-off shotgun by any other witness at trial. Crime Scene Investigator Nicole Kilgore testified that the pistol was found in a laundry basket inside of the child's bedroom (TT 299-300). Kilgore further testified that inside of the laundry basket, she retrieved a shotgun containing an intact round of ammunition inside (TT 303-304).

Any fact that supported the Petitioner's defense that neither of the burglars had time to find the firearms kept in the house by the resident's boyfriend (Joshua Cooper) before they hid and police found them inside, was crucial for the jury finding armed burglary versus simple burglary. The 9-1-1 tape would have added independent verification to the Petitioner's argument that he entered the victim's residence unarmed, came into the apartment to steal back the gun(s) he had previously sold to her boyfriend, but at no point was there time for any of the burglars to find and handle the firearms. Had the jury heard the 9-1-1 tape, the outcome of the trial would have been different. At a minimum, the exclusion of the 9-1-1 tape as evidence at trial resulted in a legal proceeding whose outcome cannot be deemed reliable versus had the jury heard independent verification that the men entered the apartment unarmed.

On direct appeal, Counsel argued that the trial court erred when refusing to allow the 9-1-1 call into evidence under either the excited utterance or the spontaneous exception. The 2019

Edition of *Erhardt's Florida Evidence* (Page 1062, Section §803.2 "Excited utterances") states, "Hearsay statements are admissible under Section §90.803(2) when there is a startling event or condition that causes a person to be in a state of excitement.   Statements made while the declarant is in an excited or stressful state which relate to the event or condition that caused the excitement are admissible under Section §90.803(2)."

The 2019 Edition of *Erhardt's Florida Evidence* (Page 1058, Section §803.1 "Spontaneous statements") states, "Hearsay statements are admissible under Section §90.803(1) when they are spontaneous and describe or explain an event, or immediately thereafter.   There must be a substantial contemporaneity between the event and the out-of-court statement.   The spontaneity of the statement negates the likelihood that the declarant engaged in reflective thought or conscious misrepresentation and provides the necessary circumstantial guarantee of trustworthiness to justify the introduction of the evidence."

The trial court's denial of Defense Counsel's motion to admit the 9-1-1 call into evidence at trial as either an excited utterance or a spontaneous statement to support the Petitioner's defense theory that he entered the residence unarmed represents a decision that was contrary to clearly established Federal law as determined by the Supreme Court of the United States.   The State court has decided the Petitioner's case differently than the United States Supreme Court has on a set of materially indistinguishable facts.

(b)  If you did not exhaust your State remedies on Ground One, explain why:     **Not applicable.**

(c)  **Direct Appeal of Ground One:**

> (1) If you appealed from the judgment of conviction, did you raise this issue?
> Yes ✓        No ☐
> (2) If you did not raise this issue in your direct appeal, explain why:
>
> **Not applicable.**

(d) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a State trial court?

          Yes ☐       No ✔

    (2)  If your answer to Question (d)(1) is "Yes," state:

          **Not applicable – raised on direct appeal.**

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, etc.) that you have used to exhaust your State remedies on Ground One:

    **No further review available on Ground One because no written opinion was issued by the District Court of Appeal that would have allowed seeking discretionary review of this claim with the Florida Supreme Court.**

          **Ground Two: Raised on Fla.R.App.P. Rule 9.141(d) Petition**

          **Appellate Counsel was ineffective for not raising on direct appeal the fact the trial court erred when it found law enforcement officer testimony at the November 2, 2015 Motion to Suppress hearing more credible than the Petitioner's testimony when denying the admittance of the 9-1-1 call into evidence.**

          **This error violated the Petitioner's 14th Amendment right to due process, and his 6th Amendment right to a fair trial under the U.S. Constitution.**

(a) **Supporting facts** (Do not argue or cite law. Just state the specific facts that support your claim):

    On direct appeal, Appellate Counsel only raised the fact that the trial court erred when refusing to allow the 9-1-1 call into evidence under either the excited utterance or the spontaneous exception.  In this claim, the Petitioner argued that Appellate Counsel was ineffective for not additionally arguing that the trial court erred by finding law enforcement officer testimony at the November 2, 2015 Motion to Suppress hearing more credible than the Petitioner's testimony when denying the admittance of the 9-1-1 call into evidence.  As noted in

Ground One, the testimony at trial was convoluted as to where the weapons were even discovered by the police.   Sergeant Mike Pierce testified that after further searching the apartment, a rifle was found lying inside of a crib (**T 251**).   Conversely, K-9 handler James Dixon testified that when he grabbed the comforter off the crib, a rifle fell out (**T 279**).   Dixon further testified that when he returned to the closet where they had discovered Williams hiding, Dixon moved some clothes around and saw the sawed-off butt of a shotgun (**T 287**).   Dixon moved more clothing and discovered what appeared to be a black handgun (**T 289**).   That would make three guns found by police, yet there is no further mention of any sawed-off shotgun by any other witness at trial.   Crime Scene Investigator Nicole Kilgore testified that the pistol was found in a laundry basket inside of the child's bedroom (**TT 299-300**).   Kilgore further testified that inside of the laundry basket, she retrieved a shotgun containing an intact round of ammunition inside (**TT 303-304**).

At the suppression hearing, law enforcement officers' testimony was also inconsistent as to the number of firearms (two or three) and as to where the weapons were found by police during their search of the apartment.   Law enforcement officers and the victim's testimony contained obvious and material inconsistencies as to whether the burglars entered the apartment with the firearms, or whether the men even found or moved the firearms from their storage places within the apartment prior to being apprehended by police.

Conversely, the Petitioner testified that the men entered the apartment unarmed and looked to steal the firearm he had sold to the resident's boyfriend at some earlier point.   The Petitioner claims that the men had no time to find the guns and leave the apartment because a neighbor immediately reported the break-in and police arrived at the scene extremely quick.

When denying the defense motion to include the 9-1-1 tape into evidence, the trial judge ruled that his decision was based on whose testimony to believe – that of law enforcement officers or that of the Petitioner. As stated in his 9.141(d) Petition (Page 10), the judge ruled the tape inadmissible stating that in order to enter the tape, "I would have to find the Defendant is telling the truth and Detective Finnegan is lying. I decline to do that" **(9.141(d) Exh. A, Lines 11-18)**.

In his Petition (Page 10), Williams even noted that Detective Finnegan took illegal advantage of the judge's adverse ruling on the 9-1-1 tape and erroneously told the jury "We have an individual that calls in 9-1-1 saying that two black males are entering the apartment with firearms" **(9.141(d) Exh. A, Lines 11-18)**. Finnegan knew that the tape was ruled inadmissible and intentionally misrepresented the callers' statements on the 9-1-1 call as to the men being armed thereby again proving that the law enforcement officers' testimony in this case was not credible.

Therefore, the 9-1-1 tape would have impeached Finnegan at trial and supported the Petitioner's argument that he entered the victim's residence unarmed, came into the apartment to steal back the gun(s) he had previously sold to her boyfriend, but at no point was there time for any of the burglars to find and handle the firearms. Had the jury heard this fact, the outcome of the trial would have been different. At a minimum, the exclusion of the 9-1-1 tape as evidence at trial resulted in a legal proceeding whose outcome cannot be deemed reliable versus had the jury heard that the men entered the apartment unarmed. But for Appellate Counsel's failure to include this argument in Williams' initial brief on direct appeal, the outcome of the Suppression Hearing would have been reversed and the Petitioner would have been granted a new trial with the critical 9-1-1 tape being heard by the jury.

The trial court's denial of Defense Counsel's motion to admit the 9-1-1 call into evidence at trial to support the Petitioner's defense theory that he entered the residence unarmed represents a decision that was contrary to clearly established Federal law as determined by the Supreme Court of the United States.  The State court has decided the Petitioner's case differently than the United States Supreme Court has on a set of materially indistinguishable facts.

(b)  If you did not exhaust your state remedies on Ground Two, explain why:    **Not applicable.**

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐        No ✓

(2) If you did not raise this issue in your direct appeal, explain why: **Ineffective Assistance of Appellate Counsel claims are raised in Florida outside of the direct appeal on a Rule 9.141(d) Petition for Writ of State Habeas Corpus.**

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a State trial court?
Yes ✓        No ☐

(2)  If your answer to Question (d)(1) is "Yes," state:
Type of petition: **Rule 9.141(d) Petition for Writ of State Habeas Corpus.**
Name and location of the court where the motion or petition was filed:
**4th District Court of Appeal, West Palm Beach, Florida**
Docket or case number:        **Unknown**
Date of the court's decision:    **April 3, 2018**
Result:                          **Petition denied on the merits.**

(3) Did you receive a hearing on your motion or petition?
Yes ☐        No ✓

(4) Did you appeal from the denial of your motion or petition?
Yes ☐        No ✓

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
**Not applicable.**

(6) If your answer to Question (d)(4) is "Yes," state:
**Not applicable.**

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:  **The Petition was denied without a written opinion thereby precluding further review by the Florida Supreme Court.**

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two:   **None.**

**Ground Three: Raised on Motion for Postconviction Relief**

**Defense Counsel was ineffective for failure to seek the trial judge's recusal due to his bias and impartiality.**

**This error violated the Petitioner's 14th Amendment right to due process, and his 6th Amendment right to a fair and impartial trial and to the effective assistance of conflict-free counsel under the U.S. Constitution.**

(a) **Supporting facts** (Do not argue or cite law. Just state the specific facts that support your claim):

This claim was raised as Ground One in Williams' April 26, 2018 Motion for Postconviction Relief, summarily denied by the lower court, and affirmed on appeal on February 8, 2019. In his **3.850 motion (Pages 3-7)**, Williams argued that immediately after the November 2, 2015 Motion to Suppress hearing, Defense Counsel should have made a motion to have trial judge Hon. Robert Pegg recused from this case. Williams stated that Pegg's ruling to exclude the 9-1-1 tape as evidence at trial was based on his oral statement that "I would have to find the Defendant is telling the truth and Detective Finnegan is lying. I decline to do that" **(3.850 Exh. A, T 183, Lines 11-18)**. Such ruling was based on the judge declaring in open court that he found the testimony of law enforcement officials truthful and that the Defendant was therefore a liar. Such rulings have long served as the basis for having trial judge's removed. In his **3.850 motion (Page 3; Page 6)**,Williams claimed that he informed Defense Counsel that Judge Pegg's comments "caused the defendant to have a well founded fear that he could not receive a fair trial" in front of this judge but that Counsel refused to file the motion to have the judge recuse himself from this trial. But for Counsel's error, the judge's recusal would have resulted in a new

suppression hearing being held in front of an impartial arbiter, and an impartial judge would have allowed the 9-1-1 call into evidence resulting in a different trial outcome. At a minimum, the exclusion of the 9-1-1 tape as evidence at trial that Counsel allowed to stand despite the judge's bias, resulted in a legal proceeding whose outcome cannot be deemed reliable versus had an impartial judge allowed the tape into evidence for the jury to hear.

The trial court's denial of this claim represents a decision that was contrary to clearly established Federal law as determined by the Supreme Court of the United States. The State court has decided the Petitioner's case differently than the United States Supreme Court has on a set of materially indistinguishable facts.

(b) If you did not exhaust your State remedies on Ground Three, explain why: **Not applicable.**

(c) **Direct Appeal of Ground Three:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?
   Yes ☐    No ✓

   (2) If you did not raise this issue in your direct appeal, explain why:
   **This ground involves a claim of ineffective assistance of trial counsel that cannot be raised on direct appeal.**

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a State trial court?
   Yes ✓    No ☐

   (2) If your answer to Question (d)(1) is "Yes," state:
   Type of motion or petition: **Rule 3.850 Motion for Postconviction Relief**
   Name and location of the court where the motion or petition was filed:
   **19th Judicial Circuit, in and for Indian River County, FL**
   Case number:                    **31-2013-CF-001635-A**
   Date of the court's decision:    **Unknown**
   Result:                          **Summarily denied.**

   (3) Did you receive a hearing on your motion or petition?
   Yes ☐    No ✓

   (4) Did you appeal from the denial of your motion or petition?
   Yes ✓    No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
Yes ✓          No ☐
(6) If your answer to Question (d)(4) is "Yes," state:
Name and location of the court where the appeal was filed:
**4ᵗʰ District Court of Appeal, West Palm Beach, Florida**
Docket or case number:          **4D18-2363**
Date of the court's decision:          **February 8, 2019 (Mandate Date)**
Result:          **Per Curiam Affirmed.**
(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:          **Not applicable.**

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, etc.) that you have used to exhaust your State remedies on Ground Three:          **None.**


**Ground Four: Raised on Motion for Postconviction Relief**

**Defense Counsel was ineffective for eliciting harmful and exculpatory testimony from Officer James Dixon at trial.**

**This error violated the Petitioner's 14ᵗʰ Amendment right to due process and his 6ᵗʰ Amendment right to effective assistance of counsel under the U.S. Constitution.**


(a) **Supporting facts** (Do not argue or cite law. Just state the specific facts that support your claim.):

This claim was raised as Ground Two in Williams' April 26, 2018 Motion for Postconviction Relief, summarily denied by the lower court, and affirmed on appeal on February 8, 2019. In his **3.850 motion (Pages 8-11)**, Williams argued that Defense Counsel elicited harmful and exculpatory testimony from Deputy James Dixon at trial that irreparably and materially damaged his defense theory. Defense Counsel elicited testimony from Dixon that the reason he went back into the apartment to look for additional firearms was because Dixon overheard the Petitioner ask Sergeant Pierce, "Which gun?" **(T 286)**. Dixon told the jury that this hearsay statement reflected the fact that Williams knew there were two guns inside the home and implied that Williams personally discovered and possessed them inside the apartment after

he entered.  Defense Counsel knew that Williams was claiming that he never had time to find the single pistol he came to steal from Josh Cooper, and that the Petitioner had no idea that Cooper also had a rifle hidden in the apartment.

There can be no trial strategy for Counsel's error that destroyed the defense theory and ensured the jury would find Williams guilty of armed burglary instead of simple burglary.  But for Counsel's error, the jury would never have heard Dixon testifying that Williams showed knowledge of the guns police found inside the residence resulting in a different trial outcome.  At a minimum, the Counsel's error resulted in a legal proceeding whose outcome cannot be deemed reliable versus had the jury not heard this inculpatory testimony from Deputy Dixon.

The trial court's denial of this claim represents a decision that was contrary to clearly established Federal law as determined by the Supreme Court of the United States.  The State court has decided the Petitioner's case differently than the United States Supreme Court has on a set of materially indistinguishable facts.

(b)  If you did not exhaust your State remedies on Ground Four, explain why:   **Not applicable.**

(c)  **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐       No ✓

(2) If you did not raise this issue in your direct appeal, explain why:
**This ground involves a claim of ineffective assistance of trial counsel that cannot be raised on direct appeal.**

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a State trial court?
**Yes ✓**       No ☐

(2) If your answer to Question (d)(1) is "Yes," state:
Type of motion or petition: **Rule 3.850 Motion for Postconviction Relief**

Name and location of the court where the motion or petition was filed:
**19th Judicial Circuit, in and for Indian River County, FL**
Case number:                          **31-2013-CF-001635-A**
Date of the court's decision:    **Unknown**
Result:                                   **Summarily denied.**

(3) Did you receive a hearing on your motion or petition?
Yes ☐          No ✔

(4) Did you appeal from the denial of your motion or petition?
**Yes ✔**          No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
Yes ✔          No ☐

(6) If your answer to Question (d)(4) is "Yes," state:
Name and location of the court where the appeal was filed:
**4th District Court of Appeal, West Palm Beach, Florida**
Docket or case number:         **4D18-2363**
Date of the court's decision:    **February 8, 2019 (Mandate Date)**
Result:                                   **Per Curiam Affirmed.**

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:          **Not applicable.**

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, etc.) that you have used to exhaust your State remedies on Ground Four:          **None.**

### *Martinez v. Ryan* Application

In *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), the Supreme Court expanded what "cause" may excuse a procedural default regarding Federal habeas petition claims (e.g. failure to exhaust State remedies). They determined that when a State court claim of "ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective" (see *Martinez*, 566 U.S. at 17). Therefore, relief is available if: (1) State procedures make it virtually impossible to actually raise ineffective assistance of trial counsel claims on direct appeal; and (2) the Petitioner's State collateral counsel was ineffective for failing to raise ineffective assistance of trial counsel claims in the State

proceedings (see *Lambrix v. Sec'y, Fla. Dep't of Corr's*, 756 F.3d 1246, 1261 n.31 (11th Cir. 2014)).  To prove that the claim is "substantial," the Petitioner must demonstrate that the claim has some merit.  *Martinez*, 566 U.S. at 10.  In *Trevino v. Thaler*, 569 U.S. 413, 429, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), the Supreme Court further explained that the exception recognized in *Martinez* applies when a State's procedural framework makes it highly unlikely that a defendant, in a typical case, will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal.

Petitioner Williams was not represented by an attorney at any point before, during or even on the appeal of his post-conviction motion.  Over the years, the Petitioner has acquired some understanding and knowledge of the law as it applies to his situation and jury trial.  However, at the time of post-conviction preparation and presentation, he had very little understanding.  The result was that several claims presented here in this Petition, if presented in Williams's original Fla.R.Crim.P. Rule 3.850 motion would have merited relief but were not included in the State filing because of Petitioner's lack of counsel and lack of knowledge of the legal intricacies involved in the postconviction filing process.  The Supreme Court, in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) while refusing to acknowledge a constitutional right to effective postconviction counsel nonetheless, from a practical standpoint, provided petitioners with some relief.  *Martinez* provides that failure to raise an ineffective assistance of counsel claim at the first practical opportunity (e.g. in a Florida 3.850 motion) whether due to the lack of counsel or deficient counsel permits federal review if the claim has substantial merit.  In other words, if a reasonably effective attorney would have raised the issue it fits within *Martinez* entitlement to review.

Here grounds 5 and 6 of Williams's Habeas petition were not properly presented to State court but would have been by a reasonably effective attorney. They cannot now be presented to the State court because Florida does not permit a successive post-conviction motion to address overlooked claims. These are strong constitutional claims that would have been the basis for relief in State court whereby trial counsel's assistance would have been deemed constitutionally deficient under the *Strickland v. Washington*, 104 S. Ct. 2052 (1984) standard. Therefore, under the *Martinez* exception, these two grounds are eligible for review in this instant Petition.

### Ground Five: Procedural Bar Excused under *Martinez v. Ryan*

**Defense Counsel was ineffective for misadvising the Petitioner not to testify in his own behalf at trial.**

**This error violated the Petitioner's 14th Amendment right to due process and his 6th Amendment right to effective assistance of counsel under the U.S. Constitution.**

(a) **Supporting facts** (Do not argue or cite law. Just state the specific facts that support your claim):

The State pleading requirements involving a claim of Defense Counsel's failure to call an exculpatory witness at trial extends to Counsel's failure to call the Defendant himself to testify in his own behalf. In order to provide a legally valid claim, the Petitioner must name the individual and state that the witness was available for trial. Both elements are met in that the "missing witness" at trial is the Petitioner and he was available and wanting to testify at trial. The other two elements are a description of the missing testimony and how that missing testimony prejudiced the defendant. In this case, Defense Counsel allowed the State witnesses to present their case without calling any witnesses to inform the jury of the defense theory. The jury heard

officers testify that Williams came into the residence armed, that the burglars possessed firearms inside the residence and that the burglars tried to hide the firearms from police when trapped inside the home when police arrived at the scene. Conversely, the jury heard no evidence from Defense Counsel that the men did not ever possess firearms at any point during their entry into the home or during their hiding from police after entering the home. Williams would have testified to the following facts. First, Williams would have provided the jury with the motive for the burglary – the Petitioner's desire to steal a pistol he had sold to Josh Cooper at some earlier date. Second, the Petitioner would have testified that none of the men were armed and that their sole motivation was to take back the pistol after entry into the apartment. Third, this testimony would have given the jury evidence that resident Gessica Kern was misinformed about not having knowledger of the firearms in her residence prior to the break-in. Fourth, the jury would have been able to weigh the Petitioner's credibility when he testified that the men never had a chance to find the firearms prior to police arriving, and never possessed any firearms while inside the residence. Fifth, Defense Counsel would have been able to point out all the discrepancies concerning the number of firearms found by police in the home and their locations as testified to the State witnesses versus the Petitioner's testimony.

But for Counsel's error, the jury would have found the Petitioner's testimony more credible than the inconsistent police testimony in this case resulting in a different trial outcome. At a minimum, the Counsel's error resulted in a legal proceeding whose outcome cannot be deemed reliable versus had the jury heard Williams explanation of motive and admitting to the crime of simple burglary.

The trial court's denial of this claim represents a decision that was contrary to clearly established Federal law as determined by the Supreme Court of the United States. The State

court has decided the Petitioner's case differently than the United States Supreme Court has on a set of materially indistinguishable facts.

(b) If you did not exhaust your State remedies on Ground Five explain why: **Petitioner did not have assistance of Counsel to assist with his Rule 3.850 motion. The procedural default is excused under the U.S. Supreme Court holding in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012).**

(c) **Direct Appeal of Ground Five:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐      No ✔

(2) If you did not raise this issue in your direct appeal, explain why:
**This ground involves a claim of ineffective assistance of trial counsel that cannot be raised on direct appeal.**

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a State trial court?
Yes ☐      No ✔
(2) If your answer to Question (d)(1) is "Yes," state:
**Not applicable.**
(3) Did you receive a hearing on your motion or petition?
**Not applicable.**
(4) Did you appeal from the denial of your motion or petition?
**Not applicable.**
(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
**Not applicable.**
(6) If your answer to Question (d)(4) is "Yes," state:
**Not applicable.**
(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:     **See answer to Question (b) above.**

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, etc.) that you have used to exhaust your State remedies on Ground Five:          **None.**

**Ground Six: Procedural Bar Excused under *Martinez v. Ryan***

**Defense Counsel was ineffective for failing to move to suppress the portion of the police taped interview whereby after an off-camera "smoking break" with police, Williams' confession to possessing the firearms inside of the residence was the product of illegal police inducement.**

**This error violated the Petitioner's 4th Amendment rights against illegal search and seizures, his 14th Amendment right to due process and his 6th Amendment right to effective assistance of counsel under the U.S. Constitution.**

(a) **Supporting facts** (Do not argue or cite law. Just state the specific facts that support your claim):

During his taped interview with police after having been taken into custody after being found by police inside the apartment, Williams repeatedly proclaimed that he did not touch any of the firearms (TT 351-352; T 356; T 362; TT 373-374; T 376; T 411). It was only after an alleged smoke break with the interrogators (off-camera) that Williams returned to the interview room and acknowledged that he possessed the two guns while inside the apartment (TT 416-417).

At trial, Lead Detective Finnegan testified that he took Williams outside along with another officer for a smoke break (T 415). While outside, Williams admitted that he had touched the guns and stated that he was sorry he had lied about it (TT 415-416). Finnegan returned inside the interview room with Williams and the Petitioner acknowledged that he took the two guns from inside the apartment (TT 416-417). Williams took the .40-caliber pistol and the .22-caliber rifle so that he could sell them on the street (T 418).

Williams told Defense Counsel that his change in statements to possessing the firearms upon returning to the taped interview room was because Detective Finnegan promised the

Petitioner he would receive a favorable plea in exchange for his changing his taped statements to admitting to handling the guns inside of the apartment.  It is unreasonable for a layperson to even believe that the Defendant would consistently deny any of the men handling any firearms inside the apartment, then "magically" reverse his statements after an "off-camera" smoke break with Detective Finnegan.  This Court should take notice that Finnegan is the same man that, after realizing the judge had ruled the 9-1-1 tape inadmissible at trial, erroneously testified that the 9-1-1 caller had stated the burglars were armed when they entered the apartment.  Deceptive police practices against young and naive black suspects are well documented throughout Florida, and the Petitioner is grateful that the U.S. Constitution protects him against the false promise made by Detective Finnegan as inducement to get Williams to changed his taped statements to police regarding possessing any firearms inside the residence.

The Petitioner informed Defense Counsel about the illegal police tactics employed to get Williams to change his taped statements about possessing any firearms inside the residence, but Counsel refused to file a motion to suppress such illegally obtained confession.  Counsel's error cannot be deemed trial strategy as any attorney acting within the broad range of professionally acceptable assistance would have filed a motion to suppress the illegally obtained taped confession to armed burglary.

But for Counsel's error, the jury would not have heard Williams taped confession to police about possessing any firearms within the residence resulting in a different trial outcome.  At a minimum, the Counsel's error resulted in a legal proceeding whose outcome cannot be deemed reliable versus had the jury not heard this taped confession to a material element of armed burglary that the State was required to prove at trial.

The trial court's denial of this claim represents a decision that was contrary to clearly established Federal law as determined by the Supreme Court of the United States. The State court has decided the Petitioner's case differently than the United States Supreme Court has on a set of materially indistinguishable facts.

(b) If you did not exhaust your State remedies on Ground Six explain why: **Petitioner did not have assistance of Counsel to assist with his Rule 3.850 motion. The procedural default is excused under the U.S. Supreme Court holding in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012).**

(c) **Direct Appeal of Ground Six:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐       No ✔

(2) If you did not raise this issue in your direct appeal, explain why:
**This ground involves a claim of ineffective assistance of trial counsel that cannot be raised on direct appeal.**

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a State trial court?
Yes ☐       No ✔

(2) If your answer to Question (d)(1) is "Yes," state:
**Not applicable.**

(3) Did you receive a hearing on your motion or petition?
**Not applicable.**

(4) Did you appeal from the denial of your motion or petition?
**Not applicable.**

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
**Not applicable.**

(6) If your answer to Question (d)(4) is "Yes," state:
**Not applicable.**

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:    **See answer to Question (b) above.**

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, etc.) that you have used to exhaust your State remedies on Ground Six:                **None.**

13.  Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest State court having jurisdiction?      Yes ☐   No ✔

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

**Petitioner did not have assistance of Counsel to assist with his Rule 3.850 motion and claims 5 and 6. However, the procedural default is excused under the U.S. Supreme Court holding in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012).**

(b) Is there any ground in this petition that has not been presented in some State or federal court? If so, what ground or grounds have not been presented, and state your reasons for not presenting them:

**See above answer to Question 13(a).**

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?      Yes ☐   No ✔

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

**Not applicable.**

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either State or federal, for the judgment you are challenging?      Yes ☐   No ✔

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised.

**Not applicable.**

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:    **APD M. Jordi Zaragoza, Public Defender's Office**
**500 S. U.S. Highway 1, Suite 107, Ft. Pierce, FL 34950**

(b) At arraignment and plea:   **APD M. Jordi Zaragoza, Public Defender's Office**
**500 S. U.S. Highway 1, Suite 107, Ft. Pierce, FL 34950**

(c) At trial:              **APD M. Jordi Zaragoza, Public Defender's Office**
                                       **500 S. U.S. Highway 1, Suite 107, Ft. Pierce, FL 34950**

(d) At sentencing:       **APD M. Jordi Zaragoza, Public Defender's Office**
                                       **500 S. U.S. Highway 1, Suite 107, Ft. Pierce, FL 34950**

(e) On appeal:           **APD Richard B. Greene, Public Defender's Office**
                                     **421 Third Street, 6th Floor, West Palm Beach, FL 33401**

(f) In any post-conviction proceeding:  **Pro Se**

(g) On appeal from any ruling against you in a post-conviction proceeding:  **Pro Se**

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ✓

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:          **Not applicable.**
    (b) Give the date the other sentence was imposed:        **Not applicable.**
    (c) Give the length of the other sentence:        **Not applicable.**
    (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?        Yes ☐  No ✓

18.    **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. §2244(d) does not bar your petition.*

        On December 15, 2016, the Fourth District Court of Appeal ("DCA") per curiam affirmed Williams's judgment.  On March 15, 2017, ninety days after the opinion date of his direct appeal with the 4th DCA, Williams's conviction became final.  The federal limitations period commenced the next day and ran for two-hundred-fifty-seven days (257) days until the limitations period was tolled on November 27, 2017, when Williams filed his 3.800(a) Motion to Correct Illegal Sentence.  On March 17, 2018, Williams filed his 9.141(d) Petition Alleging Ineffective Assistance of Appellate Counsel.  On April 3, 2018, the 4th DCA denied the 9.141(d) Petition.  On April 26, 2018, the Petitioner filed his 3.850 Motion for Postconviction Relief in

the lower court. On February 8, 2019, the mandate issued by the 4th DCA on the appeal of the lower court's summary denial order of Williams's 3.850 motion. On October 11, 2019, the mandate issued by the 4th DCA on the appeal of the lower court's summary denial order of Williams's 3.800(a) motion. Therefore, this Petition is filed timely by being date-stamped from his institution **on or before January 27, 2020** (108 days after the 3.800(a) mandate date).

*The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. §2244(d) provides in part that:

    (1)  A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

        (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, Petitioner asks that the Court grant the following relief:

- Reverse and remand this judgment back to the State courts for a new trial.

- An evidentiary hearing on this Petition

- Appointment of Counsel for any evidentiary hearing. or

- Any other relief to which Petitioner may be entitled.

## Certificate of Service

I hereby certify that the original plus two copies of this petition has been placed in the hands of prison officials for delivery via First Class U.S. Mail to: Clerk of the Court, United States District Court, 207 N.W. Second St., Room 337, Ocala, FL 34475-6666 on this 24th day of January 2020.

## Oath

Under the penalties of perjury, I declare that I have read the foregoing document and that the facts contained herein are true and correct.

1-24-2020
Date

/s/ Dedrevionus Williams
Dedrevionus C. Williams, DC#: K78641
Marion Correctional Institution
P.O. Box 158
Lowell, FL  32663-0158

If the person signing is not Petitioner, state relationship to Petitioner and explain why Petitioner is not signing this petition.